THE WESTERN PLANK-ROAD COMPANY *v.* STOCKTON.

Action to recover the amount of a subscription made by the defendant to the stock of a plank-road company, organized under the act of 1849 and the amendatory act of 1850. The complaint set forth the organization of the company, the subscription of the defendant, and the articles of association. A part of the second paragraph of the answer was as follows: The defendant says that at the time of the pretended election of directors who made the calls alleged in the complaint, stock to the amount of 1,000 dollars for each mile of said road had not been subscribed. *Held*, that a demurrer was properly sustained to this part of the paragraph.

The third paragraph alleged that the road never was constructed or commenced upon or near the state road designated in the complaint, but was fraudulently constructed upon a route not designated in the articles of association, and that no road had been or was contemplated to be built on said route, and more than two years had elapsed since the filing of said articles. Reply, that the road was commenced and built as authorized by the articles of association and acts of the general assembly, &c., specified in the complaint, the same commencing and touching and terminating at the points specified in

May Term,
1856.

THE WEST-
ERN PLANK-
ROAD CO.
v.
STOCKTON.

said articles of association, and following the general direction therein designated and authorized. Demurrer, assigning that the reply was evasive, and did not admit or deny the matters in the answer to which it was pleaded. *Held*, that the reply was sufficient.

The fifth paragraph in the answer alleged that after the defendant had signed the articles, those procuring subscriptions fraudulently permitted *A. & Co.* to sign, &c., making their subscriptions payable in books, and one *B.* to sign the same, making his stock payable on the 1st of *March*, 1852. Reply, that *A. & Co.* had subscribed for two shares, payable in books; that they were book-binders, printers, and dealers in books, at, &c.; that the plaintiffs supposed that the amount of their subscriptions would be needed by the company in the line of their business, and that nearly all the amount had been used in that way;—that *B.'s* subscription was taken on the terms stated; that it was subscribed shortly before the 1st of *March*, payable at that date, and that it had been long since paid; that all this was done after the corporate organization and in good faith. *Held*, that the reply was sufficient on demurrer.

The seventh paragraph alleged that after the defendant had so subscribed, the directors, in fraud of the defendant, received subscriptions for a large number of shares of said stock, to-wit, &c., which subscriptions appear as unconditional and of like kind with that of the defendant, when in fact said directors guarantied such persons ten per cent. per annum on their stock, making said subscriptions in reality wholly different from the defendant's and giving to these favored subscribers the whole earnings of the road. *Held*, on demurrer, that the paragraph was insufficient.

The causes assigned as grounds of demurrer by the code, apply to the reply as well as the complaint.

It seems that a demurrer to a complaint or reply, for any other causes than those prescribed by the code, should be overruled.

It is not contemplated by the general plank-road law that in designating the line of route and *termini* in the articles of association, the company should be limited to a precise line.

A party can not complain of the overruling of a demurrer to his own pleading.

APPEAL from the *Tippecanoe* Circuit Court.

Gookins, J.—This action was brought to recover the amount of a subscription made by the defendant to the stock of the company. The complaint contained three paragraphs, setting forth the organization of the company, the subscription of the defendant, and the articles of association. The defendant demurred to the complaint, assigning for cause that the articles of association did not conform to the statutes authorizing the construction of plank roads, in not specifying the line and *termini* of the road. The demurrer was overruled, and an answer of seven paragraphs was filed. The first having been with-

May Term,
1856.

THE WEST-
ERN PLANK-
ROAD CO.
v.
STOCKTON.

drawn, and issue joined on the fourth, they require no further notice. The second is as follows:

"The defendant says that at the time of the pretended election of directors who made said calls alleged in the complaint, stock to the amount of 1,000 dollars for each mile of said road, had not been subscribed, and that no calls were ever made on said stock by a legal board of directors."

Under the practice act, which authorizes issue to be taken upon a part, and a demurrer to other parts of a pleading, the plaintiffs took issue upon this paragraph of the answer, except that part which averred the non-payment of 1,000 dollars per mile prior to the election of directors, to which they demurred. The demurrer was overruled, and we think erroneously. The act of 1849, p. 88, and the amendment thereto, acts of 1850, p. 146, require certain things to be done to complete the organization of a company under them. The members are to subscribe articles of association, specifying the name of the company, route and *termini* of the road, amount of capital and number of shares; obtain subscriptions to the amount of 1,000 dollars per mile, cause their articles to be recorded, and elect directors. These statutes do not prescribe the order in which the acts are to be done. *The Covington, &c., Plank-Road Company* v. *Moore*, 3 Ind. R. 510. The averment is, not that the requisite amount had not been obtained, but that it had not been prior to the election of directors. It did not show the subscription to be invalid.

The third paragraph of the answer alleges that "said plank road never was constructed or commenced upon or near the state road designated in the complaint, but was fraudulently constructed upon a route not designated in said articles of association, and no road has been or is contemplated to be built on said route, and more than two years have elapsed since the filing of said articles." To which the plaintiffs replied that "said road was commenced and built as authorized by said articles of association, and acts of the general assembly of the state of *Indiana* specified in said complaint, the same commencing

May Term,
1856.

THE WEST-
ERN PLANK-
ROAD CO.
v.
STOCKTON.

and touching and terminating at the points specified in said articles of association, and following the general direction therein designated and authorized."

To this reply the defendant demurred, alleging for cause that it was evasive, and did not admit or deny the matters in the answer to which it was pleaded. The demurrer was sustained.

It is doubtful whether this demurrer raised any question of law. Grounds of demurrer to a complaint are limited to six in number, and the cause above assigned is not one of them; 2 R. S., p. 38, s. 50; and the statute seems imperative, that unless such a cause as is here enumerated be set down, the demurrer shall be overruled. Demurring to a reply is governed by the same rule. *Ibid.*, p. 42, s. 67.

But independent of the question of practice, we think the reply sufficient. We do not think the use of the word "fraudulently," in this paragraph of the answer, gives any additional force to the other matters alleged in it. We are to look at the facts stated, and from them judge whether the conduct of the plaintiff was fraudulent or otherwise. The fourth section of the act of 1849, p. 89, provides (after the company shall have been organized) that the directors shall proceed to locate and lay out the road. The stock subscription is a mere experiment to ascertain whether a sufficient amount can be raised to justify the undertaking. The articles of association constitute the heading of the stock subscription, and the signing and putting down the number of shares makes the subscriber a member. It is not contemplated that in designating the line of route and *termini* in the articles, the company should be limited to a precise line. No survey has been made, and whether a public highway can be secured as a line for the road, may yet have to be determined by application to the county commissioners. These circumstances may make considerable deviations from the projected line indispensable. The line of the route is described in the articles of association as follows: " Said road shall commence on the west side of the *Wabash* river, opposite the town of *Lafayette;* thence on or near the state road leading from *Lafayette* to

May Term,
1856.

THE WEST-
ERN PLANK-
ROAD CO.
v.
STOCKTON.

*White* and *Jasper* counties, across section twelve, township twenty-three north, of range five west, until the same intersects at or near the south corner of *Levi Jennings's* lane, thence in a west line, by way of the graveyard and *Talbott's* grocery and *Pond Grove*, until the same reaches the line dividing the counties of *Warren* and *Tippecanoe*, to be specifically located and determined by the directors of said association thereafter to be chosen, the whole length of said road being twelve miles, more or less." Now, the most that the third paragraph of the answer amounts to is, that the road was not constructed upon the route designated in the articles. Supposing this amounts to an averment that there had been an entire departure from the projected line of road, the reply meets that allegation by asserting that it was built as authorized by the articles, commencing, touching and terminating at the specified points, and following the general direction therein designated. That raised an issue of fact proper to be submitted to a jury. The demurrer should have been overruled.

The fifth paragraph of the answer asserts that after the defendant had signed the articles, those procuring subscriptions fraudulently permitted *Rosser* and *Brother* to sign the articles, making their subscriptions payable in books, and one *Bigger* to sign the same, making his stock payable on the 1st of *March*, 1852. The plaintiffs replied, admitting that *Rosser* and *Brother* had subscribed for two shares, payable in books; that they were book-binders, printers, and dealers in books at *Lafayette;* that plaintiffs supposed the amount of their subscriptions would be needed by the company, in the line of their business, and that nearly all the amount had been used in that way; that *Bigger's* subscription was taken on the terms stated; that it was subscribed shortly before the 1st of *March*, payable at that date, and that it had been long since paid; that all this was done after the corporate organization, and in good faith. The Circuit Court sustained a demurrer to this reply. We do not think that the facts stated in this paragraph of the answer, and in the reply to it, taken together,

show any fraud of which the defendant or any one else can complain. The demurrer should have been overruled.

May Term,
1856.

THE WEST-
ERN PLANK-
ROAD CO.
v.
STOCKTON.

The parties have discussed, at some length, an issue arising upon the defendant's demurrer to the plaintiffs' reply to the sixth paragraph of the answer, but the record shows that that demurrer was overruled. In that ruling there is nothing that the appellant can complain of.

The seventh paragraph of the answer is as follows:

"The defendant further says, that after his subscription, the directors of said company, in fraud of the defendant, received subscriptions for a large number of shares of said stock, to-wit, two hundred shares, made by *Chauncey A. Goodrich* and others, which subscriptions appear as unconditional and of like kind with that of the defendant, when in fact said directors guarantied said persons ten per cent. per annum on their stock, making said subscriptions in reality wholly different from that of the defendant's, and giving to these favored subscribers, in fact, the whole earnings of said road."

To this paragraph the plaintiffs demurred; the Circuit Court overruled the demurrer, and the plaintiffs declining to reply, final judgment was given for the defendant.

Admitting the act complained of to be illegal, it does not appear whether the subscription of *Goodrich* was taken before or after the company was organized, and if after, a question might arise, whether the only remedy would not be a proceeding to remove the directors or to dissolve the corporation. *The Newcastle Turnpike Company* v. *Bell*, 8 Blackf. 584.—*The Covington and Coal Creek, &c., Company* v. *Moore*, 3 Ind. R. 510. But we do not think it necessary to decide that question, at present. It is not averred that *Goodrich* was promised anything out of the earnings of the road. The promise was either wholly void, or was the personal undertaking of the directors, and in either case, could do the defendant no harm. The conclusion that it would give the favored subscribers the whole earnings of the road, or any part of them, is not justified by the facts alleged. We think the demurrer to

May Term,
1856.

the seventh paragraph of the answer, should have been sustained.

None of the defences set up being found good, the judgment of the Circuit Court must be reversed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, with leave to the parties to amend their pleadings.

*E. H. Brackett*, *G. S. Orth* and *J. A. Stein*, for the appellants.

*J. Pettit*, *R. C. Gregory*, *R. Jones* and *S. A. Huff*, for the appellee.